T.C. Memo. 2004-111

UNITED STATES TAX COURT

JAMES J. MILNER AND MARILYN R. MILNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5504-03.                     Filed May 4, 2004.

James J. Milner, pro se.

<u>Kelley Blaine</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined an additional tax under
section 72(t) in the amount of $5,555 relating to petitioners'
1999 Federal income tax liability.

The issue for decision is whether petitioners are subject to
the 10-percent additional tax under section 72(t) with respect to
a $55,555 distribution from a qualified retirement plan.

Unless otherwise specified, references to petitioner in the singular are to petitioner James J. Milner, and all section references are to the Internal Revenue Code in effect for the year in issue.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in Molalla, Oregon.

Through August of 1998, petitioner was employed as vice president of lending at Safeway Credit Union (Safeway). In August of 1998, petitioner was placed by Safeway on administrative leave. Petitioner received from Safeway a severance package that included total payments to petitioner of $21,000 to be made to petitioner over the course of the last 4 months of 1998 with the final payment to be made in January of 1999.

In January of 1999, petitioner's employment with Safeway was officially terminated. Shortly thereafter, in order to obtain funds to continue remodeling petitioners' home, petitioner attempted to borrow against his qualified retirement plan (the plan), which was administered by Safeway. Petitioner however was unable to obtain a loan from the plan because he was no longer employed by Safeway.

Petitioner then requested and received from the plan a total distribution of the balance in his account in the amount of $55,555. At the time of the plan distribution, petitioner was 53 years old.

Petitioner did not roll over the $55,555 proceeds of the distribution into an individual retirement account or into another qualified retirement plan. Petitioners used approximately $15,000 to $20,000 from the plan distribution in order to complete the remodeling of their home.

Later in 1999, petitioners sold their home for approximately $199,000. At the time of this sale, petitioners apparently owed approximately $188,000 on a home mortgage. After selling their home, petitioners purchased another home for a purchase price of approximately $132,000.

Sometime in 1999, petitioner Marilyn R. Milner had a heart attack and thereafter was unable to work. In January of 2001, petitioner Marilyn R. Milner applied for Social Security disability benefits relating to the heart attack. Her application, at the time of trial, was still pending.

On March 21, 2000, petitioners timely filed their 1999 joint Federal income tax return on which they reported as taxable income the $55,555 distribution that petitioner received from the plan but on which petitioners did not report a 10-percent

additional tax under section 72(t) with regard to the distribution.

On March 5, 2003, respondent mailed to petitioners a notice of deficiency in which respondent determined that under section 72(t) the $55,555 distribution petitioner received constituted an early distribution on which the 10-percent additional tax in the amount of $5,555 was due.

At the time of trial, petitioner held two jobs, working approximately 60 hours per week.

## OPINION

Generally, under section 72, a 10-percent additional tax is imposed against a taxpayer on that portion of a distribution from a qualified retirement plan that is includable in the taxpayer's gross income. Sec. 72(t)(1). Under section 72(t)(2), certain exceptions to the 10-percent additional tax are provided, none of which apply here.[1]

---

[1] For example, under sec. 72(t)(2)(A)(i), an exception to the 10-percent additional tax on an early distribution from a qualified retirement plan is provided where, on the date of the distribution, a taxpayer has attained the age of 59-1/2. Under sec. 72(t)(2)(A)(v), an exception is provided where a taxpayer, having attained the age of 55, receives a distribution after he is no longer employed by his former employer that administered the plan. As stated, petitioner was only 53 years of age when his employment was terminated and when he received his distribution.

Under sec. 72(t)(2)(B), another exception is provided where a taxpayer uses the proceeds of an early distribution to pay for
(continued...)

In their pretrial memorandum, however, petitioners argue that the additional tax imposed under section 72(t)(1) constitutes a "penalty" the imposition of which in this case would create undue hardship on petitioners. Petitioners state that "Congress intended the law to be liberally applied in favor of the taxpayer in cases in which the taxpayer was forced to retire and forced to accept a distribution from the retirement plan."

Nothing in the legislative history of section 72(t) supports petitioners' interpretation of the purpose of section 72(t)(1). To the contrary, the Senate Finance Committee, in the legislative history of section 408(f), the predecessor to section 72(t), stated that the purpose of the 10-percent additional tax was to discourage early distributions from retirement plans because "Premature distributions frustrate the intention of saving for retirement". S. Rept. 93-383, at 134 (1974), 1974-3 C.B. (Supp.) 80, 213; see also H. Conf. Rept. 93-1280, at 339 (1974), 1974-3 C.B. 415, 500. The Senate Finance Committee went on to state that the purpose of the additional tax was to prevent such premature distributions.

We find no authority in the Code, the legislative history, caselaw, or Internal Revenue Service notices and private letter

---

[1](...continued)
certain expenses for medical care. Petitioners stipulated that the $55,555 distribution petitioner received was not used for medical care.

rulings that would provide for what would amount to an umbrella hardship exception, applicable on a case-by-case basis, to the 10-percent additional tax on early distributions from qualified retirement plans.  See, e.g., <u>Vulic v. Commissioner</u>, T.C. Memo. 2004-51 (premature distribution used to refinance the taxpayer's home, to pay for son's wedding, and to make payments on credit cards subject to section 72(t) additional tax); <u>Robertson v. Commissioner</u>, T.C. Memo. 2000-100 (premature distribution used for the taxpayer's "own subsistence and that of her family" subject to section 72(t) additional tax), affd. 15 Fed. Appx. 467 (9th Cir. 2001).

Under section 72(t), petitioners are liable for the 10-percent additional tax on the $55,555 early distribution that petitioner received from the plan.[2]

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.

---

[2] Petitioners do not argue that the <u>burden</u> <u>of</u> <u>proof</u> on the issue in this case should be shifted to respondent under sec. 7491.  In any event, we do not decide the issue in this case on the burden of proof.  Also, regardless of whether the $5,555 additional tax under sec. 72(t) would be considered an "additional amount" under sec. 7491(c) and regardless of whether the <u>burden</u> <u>of</u> <u>production</u> with respect to this additional tax would be on respondent, respondent in this case has met any such burden of production by showing that petitioner received the distribution when he was 53 years of age.  See H. Conf. Rept. 105-599, at 241 (1998), 1998-3 C.B. 747, 995.